**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**ALPHONSE MOORE**                                    **CIVIL ACTION**

**VERSUS**                                            **NO. 17-1881**

**TIM HOOPER**                                        **SECTION: "N"(5)**

<u>**REPORT AND RECOMMENDATION**</u>

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).    For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

**Procedural History**

Petitioner, Alphonse Moore, is a convicted inmate incarcerated at the Elayn Hunt Correctional Center in St. Gabriel, Louisiana.    On August 21, 2008, he was charged with one count of armed robbery.[1]    On July 1, 2009, a jury found him guilty as charged.[2]    His

---

[1] State Rec., Vol. 1 of 11, Bill of Information.    Co-perpetrator, Cherisse Fox, was charged in the same bill of information.    In June 2009, Fox subsequently pleaded guilty to being an accessory after the fact and was sentenced to five years imprisonment.

[2] State Rec., Vol. 5 of 11, Minute Entry, 7/1/09.

motion for a new trial was denied.    The State originally charged him by multiple bill of information as a fourth-felony offender, but later amended the bill to charge him as a third-felony offender.    On October 8, 2009, the trial court imposed a sentence of 15 years imprisonment at hard labor without benefit of probation, parole or suspension of sentence. The original sentence was vacated, and following a multiple-bill hearing, he was found to be a second-felony offender.    The trial court sentenced him to 49.5 years imprisonment without benefit of probation, parole or suspension of sentence.[3]

On direct appeal, by counseled and pro se assignment of error, Moore argued that the trial court erred in permitting the introduction of testimonial hearsay evidence in the form of the taped statement of Moore's former codefendant in violation of the Confrontation Clause, and further by pro se assignment alone, that the trial court erred in admitting a suggestive out-of-court identification and adjudicating him a second-felony offender.[4]    The court of appeal affirmed his conviction and sentence.    He applied for rehearing, asserting error in the trial court's sufficiency finding when the relevant cleansing period was not shown, and in failing to review the issue as an error patent on the record.    The appellate court granted a rehearing to consider his claims, but affirmed its prior opinion upholding the sentence.    The court of appeal reasoned, in relevant part:

> [W]e note that there have been opinions from this Court rendered post-*Bass* which are consistent with our holding on appeal in this matter; that a

---

[3] State Rec., Vol. 5 of 11, Minute Entry, 10/8/09; *see also* State Rec., Vol. 6 of 11, Sentencing Transcript.

[4] *State v. Moore*, 2010-KA-0314 (La. App. 4 Cir. 10/13/10), 57 So.3d 1033, *aff'd on reh'g* (La. App. 4 Cir. 1/26/11); State Rec., Vol. 6 of 11.

> defendant must object to the multiple bill to preserve review of a cleansing period having elapsed between prior convictions.    This court has not taken the position that it is obligated to conduct an errors patent review for the elapse of possible cleansing periods for predicate offenses in multiple bills, when defendants have a statutory obligation to raise objections to same. However, considering that we lack a complete record of the intent of defense counsel or the defendant in failing to timely object to the multiple bill, this issue is preserved and may be raised in an application for post-conviction relief.[5]

On September 2, 2011, the Louisiana Supreme Court denied Moore's application for a writ of certiorari.[6]

On February 14, 2012, Moore submitted an application for post-conviction relief to the state district court.[7]    In that application, he asserted that trial counsel was ineffective for failing to object during the habitual-offender hearing on sufficiency grounds, *i.e.*, no proof of the cleansing period for the predicate conviction used to convict him.    The State raised a procedural objection arguing that Moore had failed to attach a valid affidavit to his application for post-conviction relief.    The district court ordered Moore to submit the affidavit, which he did.    The State filed a second procedural objection, three months beyond the deadline for such objections, arguing that the ineffective assistance of counsel claim

---

[5] State Rec., Vol. 6 of 11, *see also State v. Moore*, 57 So.3d at 1041 (citations omitted).

[6] *State v. Moore*, 2011-KO-0404 (La. 9/2/11), 68 So.3d 525; State Rec., Vol. 6 of 11.

[7] State Rec., Vol. 1 of 11, Uniform Application for Post-Conviction Relief.    While it was pending, he filed two mandamus petitions with the Louisiana Fourth Circuit Court of Appeal seeking a ruling on the application.    *See* State Rec., Vol. 7 of 11, *State v. Moore*, 2013-K-0126 (La. App. 4 Cir. Feb. 8, 2013) (writ granted for purposes of transferring the application to the state district court) and *State v. Moore*, 2012-K-1037 (La. App. 4 Cir. July 12, 2012).

during sentencing was not cognizable on post-conviction relief pursuant to *State v. Cotton*, 2009-2397 (La. 10/15/10), 45 So.3d 1030.    On October 10, 2013, the state district court issued an order denying the procedural objection, citing the Louisiana Fourth Circuit's directive in its opinion on direct appeal preserving the issue for post-conviction review, and granting relief on the merits.[8]    The State challenged that ruling in the Louisiana Fourth Circuit Court of Appeal.    On December 3, 2013, the court of appeal reversed, finding the order null and void because the district court denied the State's procedural objections and granted relief in the same order without first allowing the State to challenge the ruling on the procedural objections pursuant to Louisiana Code of Criminal Procedure article 930 (C).[9] The matter was remanded to the state district court for further proceedings.

On April 4, 2014, the state district court addressed only the State's procedural objection.    The district court found the State's procedural objection untimely under Louisiana Code of Criminal Procedure article 927.    Alternatively, the court rejected it on the merits, finding that Moore's claim was cognizable on post-conviction review.[10]    The State challenged that decision by supervisory writ application filed with the Louisiana Fourth Circuit Court of Appeal.    On May 20, 2014, the appellate court granted relief finding

---

[8]  State Rec., Vol. 1 of 11, State District Court's Ruling on Petitioner's Application for Post-Conviction Relief, 10/10/13; *see also* Order issued October 18, 2013 (resentencing to take place via teleconference link on December 4, 2013).

[9]  State Rec., Vol. 1 of 11, *State v. Moore*, 2013-K-1496 (La. App. 4 Cir. Dec. 3, 2013) (unpublished writ decision).

[10]  State Rec., Vol. 1 of 11, District Court's Ruling on State's Procedural Objections to Petitioner's Application for Post-Conviction Relief, 4/4/14.

the claim barred under *Cotton*, and reversed the state district court's ruling.[11]     Moore filed a supervisory writ application with the Louisiana Supreme Court.     On March 27, 2015, the Louisiana Supreme Court granted relief, reversed the court of appeal, and remanded *to the court of appeal* for consideration of the merits of his ineffective assistance of counsel claim.[12]

On April 16, 2015, in compliance with the Supreme Court's remand order, the Louisiana Fourth Circuit observed that the ruling on the post-conviction application was not before it, and denied relief finding no error insofar as the ruling on the State's procedural objections.[13]     On October 13, 2015, the state district court held another hearing on Moore's post-conviction application and once again granted him relief on the merits.[14]     The district court scheduled resentencing for October 29, 2015.     The State sought a stay and successfully challenged that ruling in the Louisiana Fourth Circuit.     On January 12, 2016, the court of appeal granted the State's writ concluding that Moore failed to prove that his counsel's performance was deficient and that the deficiency prejudiced him.[15]     Moore filed

---

[11]  State Rec., Vol. 3 of 11, *State v. Moore*, 2014-K-0354 (La. App. 4 Cir. May 20, 2014) (unpublished writ decision).

[12]  *State v. Moore*, 2014-KP-1282 (La. Mar. 27, 2015), 164 So.3d 186 (Guidry, J., dissenting).     This application was filed by counsel.     Before it had been ruled upon, Moore filed a pro se application, which was not considered because it was not timely filed.     State Rec., Vol. 10 of 11, No. 2015-KH-0444.

[13]  State Rec., Vol. 1 of 11, *State v. Moore*, 2014-K-0354 (La. App. 4 Cir. Apr. 16, 2015) (Belsome, J., concurs in the result) (unpublished writ decision).

[14]  State Rec., Vol. 3 of 11, *see State v. Moore*, 2015-K-1143 (La. App. 4 Cir. Oct. 27, 2015) (granting State's motion for stay pending consideration of the Oct. 13, 2015 ruling).

[15]  State Rec., Vol. 1 of 11, *State v. Moore*, 2015-K-1143 (La. App. 4 Cir. 1/12/16)

a related, but unsuccessful, application for supervisory writs with the Louisiana Supreme Court.    On January 9, 2017, the Louisiana Supreme Court denied relief without stated reasons.[16]

On February 20, 2017, Moore filed his federal application for *habeas corpus* relief.[17] In that application, he raises four grounds for relief:    (1) his right of confrontation was violated by the erroneous admission of his former co-defendant's out-of-court hearsay statement; (2) the admission of a suggestive out-of-court identification denied him a fair trial; (3) his right to due process was denied when the appellate court on direct appeal refused to consider his claim of error in habitual-offender sentencing; and (4) trial counsel was ineffective for failing to object to the sufficiency of the evidence during the habitual-offender adjudication.    The State concedes that the federal application is timely, but argues that claim three is unexhausted and procedurally defaulted, and the remaining claims should be denied as meritless.[18]    Moore has filed a rebuttal to the State's response.[19]

**Facts**

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts

---

(Jenkins, J., dissents and assigns reasons) (unpublished writ decision).

[16]   State Rec., Vol. 1 of 11, *State v. Moore*, 2016-KP-0257, 2017 WL 85552 (La. Jan. 9, 2017) (Hughes, J. would grant) (Crichton, J., concurs and assigns reasons).

[17]   Rec. Doc. 1, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus.

[18]   Rec. Doc. 11.

[19]   Rec. Doc. 12.

as follows:

> On the morning of June 22, 2008, Darrell Garnett was walking in the 1300 block of Bienville Street on his way to work when he was approached by a man and a woman. The man asked him a question while simultaneously grabbing Mr. Garnett's right arm. The man was armed with a knife. Both the male and female searched Mr. Garnett's pockets, finding money. The male then stabbed Mr. Garnett in the chest, and they searched a green tote bag that Mr. Garnett was carrying. Inside the tote bag, they found Mr. Garnett's wallet and a CD player that they took before fleeing.

> Officer Jeffrey Tyler was the first to arrive on the scene. He found Mr. Garnett on the ground bleeding. Before being transported to the hospital, Mr. Garnett gave a description of the perpetrators that was dispatched over the police radio. The male was wearing jeans and a light blue shirt with an Air Jordan logo. The female was wearing a brown shirt, cut off shorts, and a pink Las Vegas visor.

> Sergeant Arnold Williams was on Canal Street when he heard the dispatch regarding the robbery and the description of the two perpetrators. Two individuals fitting the description crossed in front of his car. They were headed in the opposite direction from which the sergeant was traveling. The female was carrying a white plastic bag. Sergeant Williams called dispatch and executed a U-turn, but lost sight of them while he was turning. He last saw the individuals at the corner of Claiborne Avenue and Canal Street near a hotel. A cab was parked at the hotel.

> Officer Donald Nydes responded to the dispatch that the perpetrators had fled towards a hotel on the corner of Claiborne Avenue and Canal Street. Once he arrived at the hotel he received information that caused him to continue to drive down Canal Street looking for a cab occupied by a male and a female. When he could not find the cab, he returned to the hotel. At the hotel, the officer approached a United Cab that was at the hotel and spoke to the driver, Faisal Samad. Mr. Samad told the officer that he picked up a male and a female and dropped them off at the corner of Banks Street and Jefferson Davis Parkway. Officer Nydes proceeded to that corner and apprehended the subjects with the help of a female officer. After other officers arrived, the subjects were returned to the hotel. Officer Eugene Smothers advised the two subjects of their *Miranda* rights. The female gave an inculpatory statement that included the location of where the victim's property could be located. The subjects were then arrested, and a sum of money was taken from the male in a search incident to his arrest. They were identified by the cab driver as the

two people who had entered his cab, and by Sergeant Williams as the individuals who had crossed in front of his police vehicle. Officer Tyler and Sergeant Williams retrieved the victim's property that was discarded in a plastic grocery bag on top of a garbage pile at the corner of Banks Street and Jefferson Davis Parkway.

Detective Douglas Butler met with the female subject, Cherisse Fox, at the station. Before he interviewed her, he provided Fox with a rights of arrestee form and informed her of her *Miranda* rights. Fox voluntarily elected to make a taped statement and signed the form waiving her rights. At trial, Fox could not remember anything regarding the incident, including giving a statement. She admitted that she knew Moore, her former codefendant, and that she entered a guilty plea to accessory after the fact to armed robbery. The tape of her statement was played for the jury. Detective Butler identified his and her voices on the tape.

Officer Smothers met with the victim, Mr. Garnett, at his place of employment to show the victim a photographic lineup. The victim immediately identified Moore; he could not identify Cherisse Fox. Mr. Garnett explained that his focus was on Moore because Moore had the knife.[20]

### Exhaustion and Procedural Default

Initially, the Court must determine whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court, *i.e.*, the petitioner must have exhausted state-court remedies and the claims must not be in "procedural default."    *Nobles v. Johnson*, 127 F.3d 409, 419–20 (5th Cir.1997) (citing 28 U.S.C. § 2254(b), (c)).    As previously noted, the State concedes that the application is timely. However, the State argues that this Court may not review claim three—that his right to due process was violated by the state court's failure to consider the habitual sentencing error as an error patent on direct appeal—on grounds of failure to exhaust and technical procedural

---

[20]   *State v. Moore*, 57 So.3d at 1035-36.

default since he can no longer bring the claim in the state courts.    In response, Moore asserts that a federal due-process claim was "substantially argued in State Court proceedings… [because] it was 'patent error' on the face of the record and (within itself) constituted a due process violation."    (Rec. Doc. 12, p 14).    He essentially argues that due process was implicated on the face of the claim.    For the following reasons, the Court finds the claim unexhausted.

"Section 2254(b) requires that prisoners must ordinarily exhaust state court remedies before filing for federal habeas relief."    *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) ("A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief.") (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Nobles v. Johnson*, 127 F.3d at 419).    "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Pliler v. Ford*, 542 U.S. 225, 233 (2004); *Rose*, 455 U.S. at 519-20).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the *highest* state court."    *Id*. (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)) (emphasis added).    "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures.    *O'Sullivan v. Boerckel*,

526 U.S. 838, 845 (1999); *accord Duncan v. Walker*, 533 U.S. 167, 177-79 (2001).

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Id.* (citing *Nobles*, 127 F.3d at 420. It is not enough for a petitioner to raise the claims in the lower state courts, if they were not also specifically presented to the Louisiana Supreme Court. *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).

In this case, the State correctly asserts that Moore failed to present his federal due-process claim in any state court as part of either direct or collateral review proceedings. On direct review, Moore raised a claim of error in his habitual-offender adjudication, *i.e.*, the trial court's allegedly erroneous finding that he was a second-felony offender on insufficient evidence. The appellate court found that the issue had not been preserved for appellate review because no objection had been made.[21] Moore challenged that ruling on rehearing, and subsequently, in the Louisiana Supreme Court, on grounds that it was contrary to state-court precedent regarding error patent. However, on post-conviction review, Moore raised only a claim of ineffective assistance of counsel during sentencing. Moore now asserts that he was denied "procedural due process of the United States Constitution of the

---

[21]    *Moore*, 57 So.3d at 1040.

14th Amendment" because of the manner in which the state appellate court chose to handle his claim (error patent versus an objectionable sentencing claim to be preserved for direct appellate review).[22]    As the state court record reveals, Moore has not fairly presented that distinct and separate claim to any state court for review, including the Louisiana Supreme Court, before raising it in this federal habeas court.    The Court therefore finds that claim three is unexhausted.

Further, as the State notes in its response, Moore's failure to exhaust his claims in state court presents an additional problem and basis for dismissal of this federal habeas claim, *i.e.*, a procedural bar in federal court.    If, as is the case here, a "prisoner fail[ed] to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," then the claims are likewise considered defaulted in federal court. *Nobles v. Johnson*, 127 F.3d at 420 (internal quotation marks omitted). There is little doubt that any future attempt to exhaust this claim would result in a procedural bar by the state courts, because any new state post-conviction application would be both repetitive (La. Code Crim. P. art. 930.4) and untimely (La. Code Crim. P. art. 930.8).    *See, e.g., State ex rel. Edwards v. State*, 16-0974, 2017 WL 4231305 (La. 9/22/17).

As a result, federal relief is barred unless Moore demonstrates either (1) the existence of "cause" for his default and resulting "prejudice" or (2) that the Court's failure to address the claims would result in a "fundamental miscarriage of justice."    *See, e.g., Bagwell v.*

---

[22]  Rec. Doc. 1, p. 32.

*Dretke*, 372 F.3d 748, 756-57 (5th Cir. 2004).    To establish cause for a procedural default, there must be something external to the petitioner, something that cannot fairly be attributed to him."    *Johnson v. Puckett*, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted).    Moore offers no justification for his procedural default of the due-process claim. Moore has not established cause for his default, and "[a]bsent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice."    *Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996).

Additionally, Moore has not demonstrated that a fundamental miscarriage of justice will occur if claim three is not considered by this Court.    In order to establish a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him.    Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted."    *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted).    Moore makes no such assertion.    Arguably, underlying his due-process claim is an assertion that he is actually innocent of his habitual-offender sentence.    Generally, however, the actual-innocence exception applies only in capital cases; an open question remains as to whether the exception is even available when the defaulted claim relates merely to an alleged sentencing error in a noncapital proceeding.    *See Haley v. Cockrell*, 306 F.3d 257 (5th Cir. 2002), *vacated and remanded on other grounds*, *Dretke v. Haley*, 541 U.S. 386, 393-394 (2004).    In any event, Moore has not satisfied his burden of proving either that he is actually innocent of the armed

robbery conviction or that he is actually innocent of the habitual-offender sentence. [23] Thus, he has not demonstrated that any miscarriage of justice will result from application of the procedural bar to his due-process claim.    Accordingly, claim three should be dismissed as procedurally defaulted.

### Standards of Review on the Merits

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").    With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

---

[23] *See* discussion of Moore's ineffective-assistance claim which addresses the multiple-offender sentence.

28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002).   A state court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent.   *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010).   An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case."   *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694.   A state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.   *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").   "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA.   *Harrington v. Richter*, 562 U.S. 86, 102 (2011).   Section 2254(d) preserves authority to issue the writ in cases

where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Harrington*, 562 U.S. at 102 (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

## Analysis

### A. Denial of Right to Confrontation

Moore claims that his Sixth Amendment right to confrontation was violated when the trial court erroneously admitted hearsay evidence at trial, namely an out-of-court taped statement made by his former co-defendant to police. The Louisiana Fourth Circuit denied the claim on direct appeal, acknowledging an error in admission but finding the error harmless for the following reasons:

> In the sole assignment of error raised by counsel and assignments of error numbers one and two of Moore pro se, counsel and Moore, pro se, argue that the district court erred in permitting the introduction of testimonial hearsay evidence in the form of the taped statement of Moore's former codefendant in violation of the Confrontation Clause. Though called to testify by the state, Ms. Fox indicated that she could not remember anything even after her memory was refreshed. The court ordered her to testify, noting that she faced no criminal liability as she had already entered a guilty plea to accessory after the fact. Ms. Fox still did not cooperate. Hence, she was declared unavailable by the court and placed in contempt. The court then ruled that the tape of her statement was admissible as a statement against interest under La. C.E. art. 804(B)(3). Moore urges in his second assignment of error that the district court erred in declaring that it was a statement against interest.

> The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him. This right provides two types of protections for a criminal defendant: the right physically to face

those who testify against him and the right to conduct cross-examination. *See also* La. Const. Art. I, § 16; La. R.S. 15:273. *State v. Welch*, 99–1283 (La. 4/11/00), 760 So.2d 317; *State v. Grainer*, 2002–0703 (La. App. 4 Cir. 12/4/02), 834 So.2d 555. Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801(C). Hearsay is not admissible except as otherwise provided by statute. La. C.E. art. 802. Hearsay evidence is excluded because the value of the statement rests on the credibility of the out-of-court asserter who is not subject to cross-examination and other safeguards of reliability. *State v. Everidge*, 96–2665, p. 7 (La.12/2/97), 702 So.2d 680, 685; *State v. Legendre*, 2005–1469, p. 7 (La. App. 4 Cir. 9/27/06), 942 So.2d 45, 50.

La. C.E. art. 804 provides that the following are not excluded by the hearsay rule if the declarant is unavailable as a witness. La. C.E. art. 804(B)(3), provides in pertinent part:

> B. Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
> * * *
> (3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true.

The statement of Ms. Fox began with Detective Butler again advising her of her *Miranda* rights. Ms. Fox indicated that she understood her rights and was voluntarily waiving her rights; she acknowledged her signature on the rights of arrestee form. Ms. Fox admitted placing money in her pocket that Moore had given her and taking a bag from Moore when he handed it to her. The remainder of her statement implicated Moore.

Ms. Fox stated that when she first saw Moore on the morning of the robbery, he had nothing in his hands. Usually they met up with each other under the overpass at the corner of Claiborne Avenue and Canal Street. They were walking together when Moore strolled up ahead of her and approached the victim. Ms. Fox thought the two men were talking. As she neared them, Moore walked away from the victim, who was now lying on the sidewalk. He told her to take a bag that contained a wallet and a CD player. Ms. Fox did not see any blood. Moore was fumbling with some money in his hand when she observed

the blade of a knife fly from his hand into the grass. Moore began running and told her to follow him. When she caught up to him, he was climbing into the back of a cab, and he told her to get in the cab. The cab driver dropped them off at the corner of Banks Street and Jefferson Davis Parkway. Moore discarded the bag containing the victim's property on a trash pile, intending to retrieve the bag later. The police subsequently arrived. Ms. Fox showed the police where the bag was discarded.

The statement of Ms. Fox qualified under the declaration against penal interest exception to the hearsay rule making the statement admissible. La. C.E. art. 804(B)(3). In her statement, Ms. Fox admits taking the bag containing items stolen from the victim, placing money in her pocket that was given to her by Moore, and fleeing with Moore despite her knowledge of the robbery. This evidence sufficiently supports her guilty plea to accessory after the fact. La. R.S. 14:25.

However, in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the U.S. Supreme Court found that certain ex parte examinations, while admissible under hearsay rules, are the type of testimonial evidence against the accused that the Confrontation Clause is supposed to prevent. The Supreme Court held that the Sixth Amendment bars admission of testimonial statements by a witness who did not appear at trial unless he was unavailable to testify and the defendant had a prior opportunity to cross-examine the witness. In *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), the U.S. Supreme Court declared that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." Conversely, statements are "testimonial when the circumstances objectively indicate there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecutions." *Id*., 547 U.S at 822, 126 S.Ct. 2266.

Here, the statement given by Ms. Fox was clearly testimonial. Thus, the first inquiry under *Crawford* is whether Ms. Fox was unavailable. The state argues that no violation of the Confrontation Clause exists because the declarant, Ms. Fox, was available for cross-examination. However, the court previously declared her as unavailable pursuant to La. C.E. art. 804(B)(3) because she was either unresponsive or could not remember anything despite the state's attempt to refresh her memory with her statement. Because she was declared unavailable by the court, defense counsel rightfully declined to cross-examine Ms. Fox as she already stated that she could not remember anything

surrounding the robbery including giving a statement. *See State v. Williams*, 2004–608, pp. 10–11 (La. App. 5 Cir. 11/30/04), 889 So.2d 1093, 1101–02. Because Moore was not provided with a prior opportunity to confront Ms. Fox, the district court erred by admitting the statement of Ms. Fox at trial.

Although improperly admitted, confrontation errors, including *Crawford* violations, are subject to a *Chapman v. State of California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), harmless error analysis.

> The correct inquiry is whether the reviewing court, assuming that the damaging potential of the cross-examination were fully realized, is nonetheless convinced that the error was harmless beyond a reasonable doubt.... Factors to be considered by the reviewing court include "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."

*State v. Wille*, 559 So.2d 1321, 1332 (La.1990) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).

Here, the error was harmless. Much of what was revealed in the statement by Ms. Fox was cumulative. For instance, the sequence of events provided by Ms. Fox was corroborated through the testimony of the cab driver and Sergeant Arnold, both of whom identified Moore and Ms. Fox after they were apprehended. The bag seized by police was found on a trash pile and contained the victim's wallet and CD player as indicated by Ms. Fox. Importantly, Mr. Garnett was certain in his identification of Moore as the person who robbed him at knifepoint and who stabbed him. Thus, considering the evidence presented at trial, the guilty verdict rendered was unattributable to the error. These assignments of error are without merit.[24]

The Louisiana Supreme Court likewise denied relief without assigning additional reasons.

The state court correctly identified *Crawford* as the controlling clearly established federal law.   *Crawford v. Washington*, 541 U.S. 36 (2004).   As per *Crawford*, the

---

[24]   *State v. Moore*, 57 So.3d at 1037-39.

Confrontation Clause bars out-of-court testimonial statements, such as those taken by police officers in the course of interrogations, unless the defendant had a prior opportunity to cross-examine the declarant and the declarant is unavailable to testify.    *Id.* at 52.    The statement received by Detective Butler from Fox was taken in the course of interrogation and improperly introduced at trial to prove the truth of the matter asserted and inculpate Moore over the defense's objection on hearsay and confrontation grounds.[25]    The state appellate court found that the statement was hearsay and that its admission violated the Confrontation Clause.    However, the state court found the error harmless.    That harmless-error determination is before this Court for review.

Under *Brecht v. Abrahamson*, habeas relief is warranted only if the error "had substantial and injurious effect or influence in determining the jury's verdict."    *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).    This test incorporates the requirements of the AEDPA, such that "a federal court may not award habeas relief under § 2254 unless the harmlessness determination itself was unreasonable.    And a state-court decision is not unreasonable if fairminded jurists could disagree on its correctness."    *Davis v. Ayala*, 135 S. Ct. 2187, 2199 (2015) (internal quotation marks and citations omitted).    Moore must therefore show that the state court's determination that any Confrontation Clause error during his trial was harmless was itself "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."    *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

---

[25]  See State Rec., Vol. 6 of 11, Trial Transcript July 1, 2009, pp. 72-73.

Contrary to Moore's suggestion that Fox's taped statement was "the crux of the state's case against [him]," the state court here found Fox's statement largely cumulative of other evidence offered at trial.    *See, e.g., United States v. Sanchez-Alaniz*, 517 F. Appx. 277, 278 (5th Cir. 2013) ("The improper admission of cumulative evidence is harmless error."); *United States v. Tolliver*, 400 F. Appx. 823, 830 (5th Cir. 2010) ("Improper admission under *Crawford* is harmless when there is no reasonable probability that the improperly admitted evidence might have contributed to the conviction, for instance, when the evidence is merely cumulative of other evidence offered without objection." (citations and quotation marks omitted)); *United States v. Yi*, 460 F.3d 623, 634-35 (5th Cir. 2006) (Confrontation Clause error was harmless where testimony regarding out-of-court statements "was not particularly important to the government's case, was cumulative to other evidence, and was corroborated by other evidence.").    That decision is not an unreasonable application of clearly established federal law.    Indeed, this case stands in marked contrast to those in which the improperly introduced evidence proved to be "the keystone" of the prosecution's case.    *See, e.g., McCarley v. Kelly*, 801 F.3d 652, 667 (6th Cir. 2015) (not harmless error in aggravated murder trial where child psychologist's testimony relating toddler's statements were a "keystone holding the arch of the State's case together" and there was no other eyewitness identification of the perpetrator); *Jones v. Basinger*, 635 F.3d 1030 (7th Cir. 2011) (admission of hearsay testimony not harmless where State lacked physical evidence and had no eyewitness testimony other than one questionable witness who was testifying under a plea agreement that eliminated four murder charges against him); *Fratta v. Quarterman*, 536

F.3d 485, 510 (5th Cir. 2008) (error not harmless where hearsay testimony provided the only information presenting a coherent picture of how the crime was carried out and the sole critical evidence that a murder-for-hire had occurred).

Here, Fox's statement confirmed Moore's involvement in the robbery and the location where they discarded the victim's stolen property. However, as the appellate court noted, the State presented significant independent evidence establishing both his participation in the robbery of the victim and the sequence of events that led the police to the stolen property. A review of the record shows the State presented ample compelling evidence of Moore's involvement in the armed robbery besides the statement given by Fox. *See United States v. Powell*, 732 F.3d 361, 379-80 (5th Cir. 2013) (confrontation error harmless where substantial independent evidence inculpating the defendant eliminates any reasonable probability that the jury, absent the prosecutor's *Bruton* error, would have acquitted defendant). The victim in this case offered direct evidence of Moore's role in the robbery, in the form of convincing witness testimony and identification. He testified that he was robbed at knifepoint and stabbed in the chest by Moore, who was accompanied by a female companion. He described the robbery in vivid detail, and said he was focused on the male because he was the one holding the knife. The victim testified that Moore told him to "give it up, give up my wallet, give it up. Give up the money."[26] He further stated that after he complied, Moore stabbed him and both perpetrators ran. He positively identified Moore by photo array several weeks after the incident. He testified at trial that he clearly saw

---

[26] State Rec., Vol. 6 of 11, Trial Transcript, p. 112.

Moore's face during the robbery.[27]    Moore's contention that the identification was suggestive and unreliable is refuted by the record (as detailed below).    Indeed as the State remarked to the jury in opening statement, "the most important person you're going to hear from is [the victim] Darrell."[28]

The state appellate court also noted that based on the descriptions obtained, the perpetrators were tracked by police officers who testified at trial to the sequence of events from the robbery to the arrest.    Sergeant Williams testified he was driving down Canal Street, heard the dispatch and saw the pair matching the perpetrators' description in the dispatch running down the street.    They crossed right in front of his vehicle and he saw that Fox was holding a white plastic bag.    Sergeant Williams identified them after they were apprehended.    The cab driver also identified Moore and Fox as the two people he transported to Banks Street and Jefferson Davis Parkway.    Officer Tyler and Sergeant Williams testified that during the course of their investigation they recovered the white plastic grocery bag containing the victim's belongings as indicated by Fox in a trash pile at Banks and Jefferson Davis.

The state-court determination that the erroneous admission of Fox's statement was harmless is not unreasonable.    This Court cannot conclude that the state appellate court's harmless-error determination "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

---

[27]    *Id.* at 115.

[28]    State Rec., Vol. 6 of 11, Trial Transcript, p. 5.

disagreement."    Therefore, this Court should defer to the state court's decision finding the

error harmless and denying his Confrontation Clause claim.[29]

B.  *Suggestive Out-of-Court Identification*

Moore claims he is entitled to relief based on the trial court's failure to suppress the

victim's suggestive and unreliable out-of-court photographic identification.[30]    He argues

that the police used an unduly suggestive photo array that resulted in an unreliable positive

identification of Moore by the victim.    He contends the procedure was also tainted by police

---

[29]   To the extent Moore may attempt to raise a claim based on Louisiana state hearsay law separate and distinct from his federal Confrontation Clause claim, that claim is meritless. The United States Fifth Circuit Court of Appeals has held:

> In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law. However, a state trial court's evidentiary rulings will mandate habeas relief when errors are so extreme that they constitute a denial of fundamental fairness. Thus, only when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted.

*Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998) (citations omitted); *see also Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998) ("The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction.").

It cannot reasonably be said that admission of the hearsay statements at issue was an error so extreme as to render Moore's trial fundamentally unfair.    For the reasons noted by the state court, the taped statement simply cannot be said to have played a crucial, critical, and highly significant role in his conviction.    The State introduced significant, compelling evidence of Moore's guilt aside from Fox's statement, including the victim's convincing testimony about the robbery and identification of Moore, which the jury obviously found credible.

[30]   *See* State Rec., Vol. 6 of 11, (Suppression Hearing Transcripts from hearings held December 17, 2008 and March 30, 2009).

suggestion to select a particular photograph.

On direct review, the Louisiana Fourth Circuit rejected the claim.    The appellate court set out the applicable federal law and corresponding state law:

> A defendant has the burden of showing that the identification was suggestive and that the procedure resulted in the likelihood of misidentification. *State v. Prudholm*, 446 So.2d 729 (La.1984); *State v. Holmes*, 2005–1248 (La. App. 4 Cir. 5/10/06), 931 So.2d 1157. A "suggestive identification" is one that unduly focuses the witness's attention on the defendant. However, even if a defendant shows that an identification is suggestive, a defendant's due process rights are only violated if there is a showing of the likelihood of misidentification. *State v. Thibodeaux*, 98–1673 (La.9/8/99), 750 So.2d 916. Once an identification procedure has been found to be suggestive, a reviewing court must look to the five factors set forth in *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), to determine whether a suggestive identification presents a substantial likelihood of misidentification: (1) the witness's opportunity to view the assailant at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation. A trial court's ruling on the admissibility of an identification is entitled to great weight and must not be disturbed unless the trial court abused its discretion by so ruling. *Holmes*, 2005–1248, p. 6, 931 So.2d at 1161; *State v. Offray*, 2000–0959 (La. App. 4 Cir. 9/26/01), 797 So.2d 764.

In applying the factors to Moore's case, the court of appeal reasoned

> Moore argues that the identification procedure was suggestive because his was the only photograph of six where the mouth of the subject was open showing a gold tooth. He adds that there was insufficient opportunity for the victim to view him because the victim admitted that the crime happened quickly, and he was focused on the knife. Moore also urges that the lack of a detailed description of his assailant also makes the identification by Mr. Garnett unreliable. Finally, he argues that there was a substantial likelihood of misidentification because of the length of time between the actual crime and the date that the victim viewed the lineup.
>
> Although Detective Smothers used photographs in the lineup that were randomly selected by computer, the photograph of Moore is distinguishable from the other photographs in that he is the only one with his mouth open

showing a gold tooth. Thus, assuming that the photographic lineup was suggestive, consideration of the factors listed in *Manson v. Brathwaite* nonetheless shows that the identification was reliable under the totality of the circumstances.

According to the victim, Mr. Garnett, he had ample opportunity to closely view Moore on the date of the incident. Mr. Garnett testified that the incident spanned a couple of minutes and that he focused solely on Moore because Moore was the subject with the knife.

Mr. Garnett gave a description of Moore which consisted only of a clothing description and description of his skin tone.[31] The accuracy of the clothing description is what led both Moore and Ms. Fox to be apprehended by police. Both were also identified by two other witnesses: Faisal Samad identified Moore and Ms. Fox as the two people who entered his cab and were dropped off at the corner of Banks Street and Jefferson Davis Parkway, and Sergeant Williams identified Moore and Ms. Fox as the two individuals who he saw cross in front of his vehicle. This assignment of error is without merit.[32]

The Louisiana Supreme Court likewise denied relief without assigning additional reasons.

The state appellate court here found that even if arguably considered unduly suggestive, the identification was nevertheless reliable under the totality of the circumstances. Because the state court denied the claim on the merits, and because the claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting the claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Coleman v. Quarterman*, 456 F.3d 537, 544 (5th Cir. 2006); *Walker v. Vannoy*, Civ. Action No. 15-6809, 2016 WL

---

[31] Based upon Mr. Garnett's testimony at trial, it is unclear whether he even noticed Moore's gold tooth during the robbery.

[32] *State v. Moore*, 57 So.3d at 1039-40 (footnote in original).

7485675, at *11 (E.D. La. Sept. 9, 2016), *adopted*, 2016 WL 7476334 (E.D. La. Dec. 29, 2016).

The United States Supreme Court has stated that "reliability is the linchpin in determining the admissibility of identification testimony" under the Due Process Clause. *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977); *see also United States v. Moody*, 564 F.3d 754, 762 (5th Cir. 2009). A two-step analysis is employed asking first, whether the identification procedure was impermissibly suggestive and second, whether under the totality of the circumstances, the suggestiveness leads to a substantial likelihood of irreparable misidentification. *Coleman*, 456 F.3d at 544 (quotations omitted). In this case, the state appellate court reasonably applied the factors articulated in *Brathwaite* and properly determined that the identification procedure used in Moore's case, even if considered suggestive because of a visible gold tooth,[33] did not lead to a substantial likelihood of misidentification and was therefore reliable under the totality of the circumstances.

As the state court correctly noted, five factors apply in assessing the reliability of an identification: (1) the witness' opportunity to view the perpetrator at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of witness' description of the perpetrator; (4) the witness' level of certainty concerning the identification; and (5) the time between the crime and the confrontation. *Brathwaite*, 432 U.S. at 114-15. In its opinion,

---

[33] The Court notes that similar arguments have been rejected by the federal courts. *See, e.g., Roussell v. Caldwell*, Civ. Action No. 17-846, 2017 WL 2790701, at *7 n. 18 (E.D. La. Jun. 7, 2017) (rejecting the suggestion that a six-photograph display was unduly suggestive because the defendant was the only person in the display with facial tattoos) (citing *United States v. Lang*, No. 06-30124, 2007 WL 1725548, at *10 (5th Cir. Jun. 14, 2007)).

the Louisiana Fourth Circuit Court of Appeal addressed Moore's arguments with regard to those factors and concluded that the identification was reliable.    Moore argues that the "substantial" passage of time combined with undue influence or suggestion made by officers during the lineup tainted the procedure.    However, given the strength of the other factors, including the victim's level of certainty based on the closeness of the encounter and his focus on the knife-wielding assailant, the passage of several weeks (June 22, 2008 to July 17, 2008) between the crime and the identification is not momentous.    *See Neil v. Biggers*, 409 U.S. 188, 201 (1972) (finding lapse of seven months between the crime and the identification was outweighed by other factors).

Nor is the Court persuaded by the argument, purportedly based on the victim's testimony, that the officer actually directed the victim to pick Moore's photo.    He refers to this as "perhaps the most egregious factor in determining suggestiveness of the identification."[34]    However, when the victim's testimony is viewed in its entirety, rather than in a vacuum as Moore suggests by his isolated four-line quote in brief,[35]  his assertion of undue influence is plainly unfounded.    The victim made it clear during the suppression hearing and also during trial that he selected the photo on his own accord because he saw and recognized the face of the man who victimized him.[36]

---

[34]  Rec. Doc. 1, p. 27.

[35]  *Id.*

[36]  *See also* State Rec., Vol. 6 of 11, Trial Transcript, pp. 115-16; Suppression Hearing Transcript of Dec. 17, 2008 (Darrell Garnett), pp. 58-60.    As the State mentions, the exchange at trial with the victim shows he was perhaps not the most articulate witness, and therefore his answer to the question must be construed liberally with that in mind.    The

Upon review, the state court's determination was not objectively unreasonable. Accordingly, in light of the deferential standards mandated by the AEDPA, Moore's claim concerning the identification should be denied.

### C. Ineffective Assistance of Counsel at Sentencing

Moore claims his counsel was ineffective for failing to object in the habitual-offender proceedings to the sufficiency of the court's findings. He asserts that the cleansing period had elapsed for the 1996 predicate felony theft conviction used to sentence him as a second felony offender on the instant 2008 offense. He raised the claim in his application for post-conviction relief. In support of the claim he submitted proof of his discharge date (June 17, 1997). [37] He argued that had counsel raised the issue during the habitual-offender adjudication, there is more than a reasonable probability he would not have received an enhanced sentence. The Louisiana Fourth Circuit Court of Appeal and the Louisiana Supreme Court denied relief. The Louisiana Fourth Circuit offered the last reasoned decision rejecting the claim because Moore had not shown either deficient performance or prejudice. The Louisiana Supreme Court likewise denied relief without assigning additional reasons.

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel. Specifically, a petitioner seeking relief must

---

defense cited the victim's "low cognitive ability" and speech impediment, in a motion for competency hearing, which was denied. *See* State Rec., Vol. 3 of 11, Ruling, 3/30/09.

[37] Rec. Doc. 1-2, Exhibit A at 14.

demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense.    *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."    *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e*, deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.    *Strickland*, 466 U.S. at 697.

    To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.    *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).    Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689.    "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"    *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).    A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.    *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

Because the state courts rejected his ineffective assistance of counsel claims on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Moreover, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact doubly deferential:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Ibid.* "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. ––––, ––––, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

*Harrington v. Richter*, 562 U.S. at 101 (citation omitted).    The Supreme Court then explained:

> Surmounting *Strickland's* high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

*Id.* at 105 (citations omitted; emphasis added).    Therefore, on habeas review of an

ineffective-assistance claim, "federal courts are to afford *both* the state court and the defense attorney the benefit of the doubt."    *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted).    Applying those highly deferential standards in this case, the Court finds Moore has not shown he is entitled to relief on his ineffective-assistance-of-counsel claim.

The State initially filed a multiple bill of information alleging that Moore was a fourth-felony offender based on three predicate convictions: (1) No. 352-997, in which Moore entered a guilty plea in 1992 to possession with intent to distribute cocaine and received a suspended five-year sentence and three years active probation;[38]    (2) No. 384-404, in which Moore entered a guilty plea in 1996 to two counts of felony theft and received one year on each count to run concurrent; and (3) No. 352-997, in which Moore entered a guilty plea in 1997 to felony theft and received five years imprisonment.    The State subsequently amended the multiple bill to delete the 1992 predicate and proceeded with the multiple bill charging him as a third-felony offender based on the 1996 and 1997 predicate felony convictions.[39]    However, at the multiple-offender hearing the trial court found the evidence

---

[38]    The Court notes that the multiple bill references 4/20/92 as the date of the conviction, but the State refers to a 1991 conviction.    The record contains little documentation with regard to this particular conviction likely because it was not part of the multiple-offender adjudication.    Nevertheless the reference, whether 1992 or 1991, is to his conviction for possession with intent to distribute cocaine.

[39]    In the State's Writ No. 2015-K-1143 filed with the Louisiana Supreme Court, the State noted "the amendment occurred because the State had not procured the necessary documents to prove the 1991 conviction, and there is little functional difference between a 66.6 year sentence and a sentence of 99 years to life."    State Rec., Vol. 8 of 11, Application for Writ of Certiorari No. 2015-K-1143, p. 5 n. 2.

sufficed to show only that Moore was a second-felony offender because the certified packet for the 1997 conviction did not include a fingerprint card.    No objection was raised by defense counsel that, without the 1997 conviction to link the 1996 conviction to the current one, there was no valid predicate.[40]    Moore was sentenced as a second-felony offender.

The State argues that an objection by defense counsel would not necessarily have

---

[40]  In 2008, Louisiana Code of Criminal Procedure Section 15:529.1(C) read:

The current offense shall not be counted as, respectively, a second, third, fourth, or higher offense if more than ten years have elapsed between the date of the commission of the current offense or offenses and the expiration of the maximum sentence or sentences of the previous conviction or convictions... or between the expiration of the maximum sentence or sentences of each preceding conviction or convictions... alleged in the multiple offender bill and the date of the commission of the following offense or offenses. In computing the intervals of time as provided herein, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any of said ten-year periods between the expiration of the maximum sentence or sentences and the next succeeding offense or offenses.

Under Louisiana law, the state bears the burden of proving that the predicate conviction falls within the "cleansing period" set forth under Louisiana Revised Statute 15:529.1 C. *State v. Tatten*, 12–0443, p. 9 (La. App. 4 Cir. 5/1/13), 116 So.3d 843, 849, *writ denied*, 13–1236 (La.12/2/13), 126 So.3d 498. This 10-year "cleansing period" begins to run from the date that a defendant is actually discharged from state custody and supervision. *State v. Anderson*, 349 So.2d 311, 314 (La.1977); *State v. Robinson*, 11–0066, p. 13 (La. App. 4 Cir. 12/7/11), 81 So.3d 90, 97. Thus, the commencement of the "cleansing period" is from the date of discharge from state supervision, because the discharge can take place earlier than the theoretical date on which the sentence would have terminated due to pardon, commutation or good time credit, or it could take place later because of parole revocation. *State v. Humphrey*, 96–838, p. 13 (La. App. 5 Cir. 4/29/97), 694 So.2d 1082, 1088, *writ denied*, 97–1461 (La.11/7/97), 703 So.2d 35. However, if less than the "cleansing period" has elapsed between a defendant's conviction on a predicate felony and his commission of a subsequent predicate felony, the State need not prove the date of discharge on the earlier sentence in the habitual-offender proceedings. *State v. Brooks*, 01–864, p. 12 (La. App. 5 Cir. 1/29/02), 807 So.2d 1090, 1101 (citations omitted).

been in his client's best interest given Moore's lengthy criminal history (initial multiple bill listed three prior convictions and a fourth felony conviction from 2005 existed as well), and the certainty of an appeal by the State with the potential that Moore ultimately would receive an even more severe sentence as a third-felony offender.    The State's position was supported during state-court proceedings with an affidavit from the prosecutor, who represented the State at the enhancement proceedings.    In the affidavit, the prosecutor explains the State believed the trial court's finding as to the insufficiency of the 1997 predicate conviction was clearly erroneous under state law,[41]  but chose not to challenge it because the State was satisfied with the double-offender sentence of 49.5 years; however, the State would have challenged any ruling by the trial court finding Moore not to be a multiple offender.    Moreover, the State correctly notes that similar sufficiency rulings based on fingerprint evidence have been challenged successfully in the past in Louisiana state court and overturned.[42]    Defense counsel obviously knew this potential existed and

---

[41]   The State's response sets forth the substantial evidence introduced at the multiple-offender hearing.    Rec. Doc. 11, pp. 22-23.    *See also* State Rec., Vol. 6 of 11, Multiple Offender Hearing Transcript.

[42]   Rec. Doc. 11, p. 24 n. 37 (citing State Rec., Vol. 2 of 11, Writ Application, pp. 11-15 and authorities relied upon).    For instance, in *State v. Watkins*, 2013-1248 (La. App. 4 Cir. 8/6/14), 146 So.3d 294, 316, the State conceded that there were no fingerprints on any document in the certified pack. Nevertheless, the court of appeal noted "the state correctly submits that fingerprints are not absolutely required to link a defendant to documents evidencing a prior conviction in a habitual offender proceeding, as reiterated by the Louisiana Supreme Court in *State v. White*, 13–1525 (La. 11/8/13), 130 So.3d 298."    In *White*, the Supreme Court explained:

> To meet its burden under the Habitual Offender Act, the State must establish both the prior felony conviction and the defendant's identity as the same person who committed that prior felony. *State v. Payton*, 00–2899, p. 6

may well have determined that an objection provided no real potential benefit, but only risk, for his client under the circumstances.[43]

In contrast, Moore essentially argues that his counsel's failure to object to the State's use of the 1996 predicate conviction was outright deficient performance such that no credible reason could possibly exist for such an omission; therefore, the state-court decision finding no deficiency in performance would necessarily be unreasonable.    The Court rejects Moore's *per se* deficient performance assertion.    The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.    And here there most certainly is a reasonable argument to be made.    Indeed, a state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.

---

(La.3/15/02), 810 So.2d 1127, 1130; *State v. Neville*, 96–0137, p. 7 (La.App. 4 Cir. 5/21/97), 695 So.2d 534, 539–40. This Court has repeatedly held the Habitual Offender Act does not require the State to use a specific type of evidence to carry its burden at a habitual offender hearing. Rather, prior convictions may be proved by any competent evidence. *Payton*, 00–2899 at p. 8, 810 So.2d at 1132; *State v. Blackwell*, 377 So.2d 110, 112 (La.1979); *State v. Curtis*, 338 So.2d 662, 664 (La.1976).

*White*, 13–1525, p. 2, 130 So.3d at 300.

[43]  The Court notes that in Justice Crichton's concurring opinion, he observed the 10-year cleansing period set forth by R.S. 15:529.1(C), did not elapse based on his own independent review of the Department of Safety and Corrections records and Louisiana law, because Moore spent at least four years during the 11-year period incarcerated.    That time does not accrue under state law toward the required 10 years.    This would likewise support the conclusion that petitioner has shown neither deficient performance nor prejudice.    *See State v. Moore*, 2017 WL 85552 (La. 1/9/17).    The Court need not reach this alternative basis or the prejudice prong of the test.

Moore relies on *Hensley v. Cain*, Civ. Action No. 07-1423, 2008 WL 3365690 (E.D. La. Aug. 7, 2008), to show that the state courts unreasonably denied his ineffective assistance claim.    Like *Hensley*, he contends he proved counsel was deficient for failing to challenge the 1996 predicate conviction, and that he suffered prejudice in the form of a greatly enhanced sentence as a second felony offender (49.5 years imprisonment rather than 15 years).    *Hensley* is not controlling.    Nor does it support Moore's position in any event. Unlike Moore, Hensley's trial counsel was not faced with a double-edged sword – where he had a valid objection to raise, but one that could ultimately increase his client's sentence. Hensley's counsel had nothing to lose and no reason not to object.    Thus, the Court in *Hensley* concluded "trial counsel failed to raise a significant issue, obvious under well-settled state law, with no apparent legitimate strategic reason for doing so."[44]    Hensley is clearly distinguishable from the instant case.

For the foregoing reasons, Moore has not demonstrated that the state court's decision rejecting his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.    He is not entitled to relief on this claim.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Moore's application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and

---

[44]    *Hensley*, 2008 WL 3365690, at *12.

recommendation in a Magistrate Judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[45]

New Orleans, Louisiana, this ___13th___ day of _____October_____, 2017.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[45] *Douglass* referenced the previously applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.